# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| SAVE OUR SCENIC AREA and FRIENDS OF THE COLUMBIA GORGE, ) ) ) Respondent, ) ) v. ) ) SKAMANIA COUNTY, ) ) Appellant. ) ) | NO. 71363-9-I<br><br>DIVISION ONE<br><br><br>UNPUBLISHED OPINION<br><br>FILED: March 31, 2014 |

LAU, J. — Friends of the Columbia Gorge and Save Our Scenic Area (collectively "Friends") sued Skamania County (County) for declaratory and injunctive relief, alleging the County (1) violated the Growth Management Act (GMA), chapter 36.70A RCW, by failing to complete periodic review of its natural resource lands ordinance, (2) violated the Planning Enabling Act (PEA), chapter 36.70 RCW, by failing to ensure consistency between its 1986 zoning ordinance and its 2007 comprehensive plan, and (3) violated the State Environmental Policy Act (SEPA), chapter 43.21C RCW, by narrowing the geographic scope of a five-year development moratorium without environmental review. The trial court granted the County's motion for summary judgment dismissal, ruling that the GMA and PEA claims were untimely and that SEPA did not apply to the moratorium

modification. We affirm dismissal of the SEPA claim but remand for further proceedings on Friends' GMA periodic review and PEA consistency claims.

FACTS

Skamania County is a rural, heavily forested jurisdiction in southwestern Washington. The County adopted its first comprehensive plan in 1977, under the authority of the PEA. In 1986, it adopted a zoning ordinance codified at Skamania County Code (SCC) title 21. The zoning ordinance included a classification titled "Unmapped," which applied to "[t]hose areas of the county where no formal adoption of any zoning map has taken place . . . ." The ordinance provided, "In the areas classified as unmapped (UNM) all uses which have not been declared a nuisance by statute, resolution, ordinance, or court of jurisdiction are allowable."

In 1993, the County adopted zoning classifications and development regulations, codified at Skamania County Code title 22 (Title 22), to implement the requirements of the federal Scenic Area Act, 16 U.S.C. § 544, and of the associated Columbia River Gorge Management Plan. Title 22 applies exclusively to County land located within the Columbia River Gorge National Scenic Area.

Under the GMA, all counties must designate "[n]atural resource lands." RCW 36.70A.170. In 2005, the County adopted Resolution 2005-35, which declared "the designation of forest and agricultural land within the [Columbia River Gorge] National Scenic Area and the development regulations adopted under SCC Title 22 meets the requirements of the Growth Management Act (RCW 36.70A) for the conservation of forest, agricultural, and mineral resource lands." For purposes of this

-2-

appeal, Friends acknowledges that the County's adoption of Resolution 2005-35

satisfied its statutory obligation to designate natural resource lands.[1]

On July 10, 2007, the County adopted a new comprehensive plan that

designated much of the County's land "conservancy." The plan provided, "The

Conservancy land use area is intended to provide for the conservation and

management of existing natural resources in order to achieve a sustained yield of these

resources, and to conserve wildlife resources and habitats." Following the new

comprehensive plan's adoption, some of the County's land carried both an unmapped

zoning classification and a conservancy plan designation.

That same day, the County also enacted an ordinance that established a six-

month development moratorium applicable to approximately 15,000 acres of unzoned

(unmapped), private land within the unincorporated portion of the County. The

ordinance stated the moratorium's purpose was "to maintain the status quo of the area

pending the County's consideration of developing zoning classifications for the areas

covered by the newly adopted 2007 Comprehensive Plan and completing the Critical

Areas Update Process . . . ." The County intended the moratorium to remain in effect

"until the zoning classifications related to the 2007 Comprehensive Plan and the Critical

Areas Update Process are complete."

The County renewed the full moratorium every six months for five years. The

last full renewal occurred on June 12, 2012. Approximately two months into the six-

---

[1] Friends' opening brief states, "[Friends] argued below that the County failed to meet both its 1991 deadline to designate resource lands and its 2008 deadline to complete its first round of periodic review of these designations. On appeal, [Friends] assign[s] error only to the County's failure to meet the latter deadline." Br. of Appellants at 19 (citations omitted).

month term, the County substantially modified the moratorium. Enacted on August 21, 2012, Ordinance 2012-08 extended the moratorium for an additional six-month term but narrowed its scope to an approximately 4,500-acre region known as the "High Lakes." The ordinance stated the County was still "in the process of updating zoning classification for all land within unincorporated Skamania County to be consistent with the adopted Comprehensive Plan . . . ."

Save Our Scenic Area and Friends of the Columbia Gorge are Washington nonprofit organizations whose members claim an interest in environmental protection, preservation, and restoration. In September 2012, Friends sued the County for declaratory and injunctive relief, alleging, among other claims not at issue here, that the County (1) violated the GMA by failing to complete periodic review of its natural resource lands ordinance, (2) violated the PEA by failing to ensure consistency between its 1986 unmapped zoning classification and its 2007 conservancy comprehensive plan designation, and (3) violated SEPA by narrowing the geographic scope of its unzoned lands development moratorium without environmental review. Friends sought an injunction requiring the County, among other actions, to "adopt zoning regulations for the Unmapped lands consistent with the [County] Comprehensive Plan," and to reinstate, in substance, the unzoned lands development moratorium.

The trial court granted the County's motion for summary judgment on all claims relevant here.[2] It ruled Friends' GMA and PEA claims were time barred and SEPA did not apply to the County's enactment of Ordinance 2012-08.[3] Friends appeals.

---

[2] Friends also alleged that the County violated the GMA by failing to conduct periodic review of its critical areas ordinance. On that claim, the County conceded a

-4-

ANALYSIS

The trial court dismissed Friends' GMA and PEA claims as time barred. Based on our review of the summary judgment record, we conclude the court improperly resolved the timeliness issues as a matter of law. We agree, however, that SEPA does not apply to the modification of the County's unzoned lands development moratorium.

Standard of Review

When reviewing an order granting summary judgment, we consider whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "We engage in the same inquiry as the trial court." Int'l Longshore & Warehouse Union, Local 19 v. City of Seattle, 176 Wn. App. 512, 519, 309 P.3d 654 (2013). "[A] trial is absolutely necessary if there is a genuine issue as to any material fact." Jacobsen v. State, 89 Wn.2d 104, 108, 569 P.2d 1152 (1977).

GMA Periodic Review

Friends' first claim involves the GMA's requirement under RCW 36.70A.130(1)(b) that the County conduct periodic review of its natural resource lands ordinance. Friends claims the County never completed review. The County contends the trial court properly dismissed this claim as time barred.

---

violation and agreed to complete review by December 1, 2013. On appeal, Friends raises no issue regarding critical areas periodic review.

[3] In ordering Friends' complaint "dismissed with prejudice," the trial court simultaneously relied on CR 12(b)(1), CR 12(b)(6), and CR 56(c), which authorizes summary judgment. For purposes of this appeal, the parties agree the trial court functionally granted summary judgment under CR 56(c).

The court agreed with the County's argument that its August 2, 2005 adoption of Resolution 2005-35 satisfied the periodic review requirement, thereby triggering a limitations period. As stated above, Resolution 2005-35 declared that "the designation of forest and agricultural land within the [Columbia River Gorge] National Scenic Area and the development regulations adopted under SCC Title 22 meets the requirements of the Growth Management (RCW 36.70A) for the conservation of forest, agricultural, and mineral resource lands." The court ruled:

> With respect to the County's GMA Natural Resource Designation and Update requirements, the County addressed these GMA requirements in 2005, through Resolution 2005-35. It is now 2012. GMA contains a 60-day appeal period, and land use decisions are to be reviewed expeditiously. With seven years having past [sic], it is now too late for an appeal to be filed.

Based on our de novo review of the summary judgment record, we conclude the court improperly decided this issue as a matter of law.

On July 10, 2007, the County enacted a moratorium ordinance "to maintain the status quo of the [County's unzoned private lands] pending the County's consideration of developing zoning classifications for the areas covered by the newly adopted 2007 Comprehensive Plan and completing the Critical Areas Update Process . . . ." The County renewed the moratorium ordinance every six months for five years. The County contends its August 2, 2005 adoption of Resolution 2005-35 satisfied the periodic review requirement. On summary judgment, we view the evidence and any reasonable inferences from the evidence in a light most favorable to the nonmoving party—Friends.

The July 10, 2007 moratorium ordinance indicated the County was still working to review its commercial forest lands designation.[4] It contained a finding stating, "[T]he County Commissioners are determining which areas will be designated as commercial forest land and protected from the encroachment of residential uses as required by the Growth Management Act." Each renewal ordinance—including the August 21, 2012 ordinance that narrowed the moratorium's geographic scope—contained an identical finding. When viewed in context, these findings reveal a genuine issue of material fact as to whether the County actually completed periodic review on August 2, 2005. The trial court improperly decided this question as a matter of law. We reverse the trial court's time bar ruling and remand for further proceedings.

Planning Enabling Act Consistency Requirement

Friends' second claim involves the PEA's mandate that "the development regulations of each county that does not plan under RCW 36.70A.040 [the GMA] shall not be inconsistent with the county's comprehensive plan." RCW 36.70.545. Friends claims the unmapped zoning classification in the County's 1986 zoning ordinance conflicted with the conservancy designation in its 2007 comprehensive plan. The County contends the trial court properly dismissed this claim as time barred.

The trial court agreed with the County's argument that a limitations period commenced on July 10, 2007, the date the County adopted the allegedly inconsistent conservancy comprehensive plan designation. It ruled:

---

[4] Under the GMA, designation of natural resource lands involves designation of "[f]orest lands that are not already characterized by urban growth and that have long-term significance for the commercial production of timber." RCW 36.70A.170(1)(b).

The County adopted the regulations applicable to Unzoned lands 27 years ago, and updated its Comprehensive Plan to address and provide for the designation of lands as Unzoned, in 2007. Washington policy is to review decisions affecting use of land expeditiously. The usual appeal period for land use decision is 21-30 days. If GMA's analogous appeal period is used, an appeal must be filed within 60-days. Either way, the appeal period has past [sic].

(Footnote omitted.) Viewed in a light most favorable to Friends, the evidence here raises genuine material issues of fact. The court improperly decided this issue as a matter of law.

The record shows a fact question remains as to the date on which the inconsistency, if any, arose between the unmapped zoning classification and the conservancy plan designation. On the day the County adopted the conservancy plan designation, it also enacted the first in a series of moratorium ordinances that effectively prohibited development on "any parcel located within unincorporated Skamania County that is not currently located within a zoning classification . . . ." The challenged unmapped zoning classification applied to "[t]hose areas of the county where no formal adoption of any zoning map has taken place . . . ." Accordingly, the moratorium ordinances effectively prohibited development on the County's unmapped lands.

With development prohibited on the unmapped lands, a genuine issue of material fact exists as to whether any genuine inconsistency existed between the unmapped classification and the conservancy designation—and, if so, when the inconsistency arose. Reasonable minds could differ on whether the moratorium ordinances rendered the unmapped zoning classification practically inoperative, thereby temporarily eliminating any actionable inconsistency between the classification and the 2007

conservancy plan designation. We reverse the trial court's time bar ruling and remand for further proceedings.

SEPA

Friends also contends, "The Superior Court erred in holding that Skamania County's decision to repeal its five year development moratorium from thousands of acres of land was not subject to review under the State Environmental Policy Act." Br. of Appellants at 34 (boldface omitted). The dispositive issue is whether the County's August 21, 2012 enactment of Ordinance 2012-08, which narrowed the geographic scope of the County's unzoned lands development moratorium, was an "action" triggering SEPA's environmental review procedures. We conclude that SEPA does not apply.

As discussed above, the County enacted Ordinance 2012-08 on August 21, 2012. This ordinance renewed the County's development moratorium for an additional six-month term but narrowed its geographic scope. The modified moratorium applied solely to a 4,500-acre portion of the County known as the High Lakes. It thus applied to approximately 10,000 fewer acres than did its predecessors.

Friends argues, "[B]ecause Ordinance 2012-08 modified and partially repealed the five-year moratorium, it was an 'action' under SEPA, thus requiring environmental review of its impacts." Br. of Appellant at 35. The County responds premised on three alternative grounds: (1) Friends lacked standing to challenge its SEPA compliance; (2) moratorium modification, under the circumstances present here, was not an "action" for SEPA purposes; and (3) to the extent modification was an "action," it was subject to

SEPA's exemptions for emergencies or procedural actions. Assuming without deciding that Friends had standing, we conclude the County took no "action" for SEPA purposes.

"One of SEPA's purposes is to provide consideration of environmental factors at the earliest possible stage to allow decisions to be based on complete disclosure of environmental consequences." King County v. Wash. State Boundary Review Bd. for King County, 122 Wn.2d 648, 663, 860 P.2d 1024 (1993). To this end, SEPA requires certain governmental entities to prepare an environmental impact statement (EIS) "on proposals for legislation and other major actions having a probable significant, adverse environmental impact." RCW 43.21C.031(1). But "SEPA does not compel environmental review of a decision that is not an 'action.'" See Int'l Longshore, 176 Wn. App. at 522. Therefore, we must decide whether the County's enactment of Ordinance 2012-08 constituted an "action" for SEPA purposes.

Friends relies on WAC 197-11-704, a SEPA rule providing that the term "action" includes both "[p]roject" and "[n]onproject" actions. The rule states, "Nonproject actions involve decisions on policies, plans, or programs." WAC 197-11-704(2)(b). Under WAC 197-11-704(2)(b)(i), the term "nonproject action" includes "[t]he adoption or amendment of legislation, ordinances, rules, or regulations that contain standards controlling use or modification of the environment . . . ." Friends asserts the County's enactment of Ordinance 2012-08 was a "nonproject action" within the meaning of WAC 197-11-704(2)(b)(i). It argues, "Ordinance 2012-08 meets this definition, because it is an ordinance modifying the County's five-year moratorium and thereby dictating which lands may or may not be developed." Br. of Appellants at 40. We disagree.

Contrary to Friends' contention, Ordinance 2012-08 contained no "standards controlling use or modification of the environment." WAC 197-11-704(2)(b)(i). It merely directed reversion to preexisting standards, established by the 1986 zoning ordinance and the 2007 comprehensive plan. The preexisting zoning ordinance and comprehensive plan embodied the County's "decisions on policies, plans, or programs." WAC 197-11-704(2)(b). Ordinance 2012-08 did not.

Although Friends fears Ordinance 2012-08 will facilitate "unplanned development" on "thousands of acres of unzoned lands throughout the County," it identifies no project, or even a phase of a project, that derives authorization directly from the ordinance. Br. of Appellant at 34. On our record, approval of future project proposals will proceed entirely under preexisting development regulations.

Friends relies on Byers v. Board of Clallam County Commissioners, 84 Wn.2d 796, 529 P.2d 823 (1974), but that case is unhelpful. In Byers, the court held that adoption of a detailed interim zoning ordinance, scheduled to remain in effect for four years, required preparation of an EIS. It did not analyze whether enactment of an ordinance narrowing the scope of a moratorium triggered the same requirement. Byers is not controlling.

We conclude that the enactment of Ordinance 2012-08 was not an "action" for SEPA purposes. Accordingly, we affirm the grant of summary judgment on this issue.

## CONCLUSION

For the reasons discussed above, we reverse the trial court's timeliness rulings and remand for further proceedings consistent with this opinion on Friends' GMA

periodic review and PEA consistency claims. We affirm the court's dismissal of Friends'

SEPA challenge.

_____ Fan, J. _____

WE CONCUR:

_____ Spearman, A.C.J. _____   _____ Becker, J. _____